675 So.2d 1230 (1996)
Kathy R. DAVENPORT
v.
William C. MANNING, Jr.
No. 95-CA-2349.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1996.
*1231 Frank J. Romaguera, IV, L. Walker Allen, II & Associates, New Orleans, and R. Lee Eddy, III, Metairie, for Plaintiff.
Raymond C. Burkart, Jr., New Orleans, for Defendant.
Before SCHOTT, C.J., and LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This is a child custody modification proceeding. The father, William C. Manning, Jr., sought to modify the physical custody provisions of a joint custody judgment. The mother, Kathy R. Davenport, opposed any such modification. The trial court denied the modification and we affirm.
Mr. Manning and Ms. Davenport have one child, Caitlin, who was seven years old at the time of trial. A joint custody judgment had been entered, by stipulation, some time earlier. The joint custody judgment made Ms. Davenport the primary domiciliary parent. She lives in the New Orleans area. Under that judgment, Caitlin lives primarily with her mother, but, every other weekend she lives with her father and during the summer she lives with her father for two periods of two weeks each, which periods must be at least one month apart. The child custody judgment also makes provisions for Caitlin to spend various holidays with each parent and addresses other details of the joint custody. The evidence is that these arrangements have worked well.
Mr. Manning originally is from the Chicago area. All of his family, other than Caitlin, live there. At the time of trial, he lived and worked as a nurse in the New Orleans area. However, because he wished to be close to his family, particularly his elderly and ill father,[1] he began to seek employment in the Chicago area and hoped to move there.
Because he wished to move to the Chicago area, he filed a Rule to modify the custody judgment. Specifically, he sought to modify the custody judgment so that Caitlin would not live with him every other weekend, and would live with him for twelve continuous weeks during the summer rather than just the two periods of two weeks each during the summer. Ms. Davenport opposed the modification and the trial court denied it.
The trial court found that Mr. Manning had failed to carry the burden for modification of a child custody decree prescribed by Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). In that case, the Supreme Court held that a party seeking modification of a permanent child custody "considered decree" must carry a "heavy burden" of either (1) "proving that the continuation of the present custody is so deleterious to the child as to justify modification" or (2) "proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child." Id. In this Circuit, a stipulated judgment, like that in the present case, is a "considered decree" subject to modification only when the "heavy burden" prescribed by Bergeron is met. Monteleone v. Monteleone, 591 So.2d 1228, 1234-35 (La. App. 4th Cir.1991).
Mr. Manning does not argue on appeal that he carried the "heavy burden" prescribed by Bergeron. Instead, he argues only that Bergeron is not applicable to the present case. The sole issue raised by Mr. Manning on appeal is "whether the heavy burden of Bergeron applies where a party seeks to modify only physical custody, and not legal custody." He argues that "Bergeron applies [only] when a party is seeking to change legal custody, i.e. from sole custody to joint custody or joint custody to sole custody." (emphasis added).
Initially, we note that Mr. Manning waived this issue, and did not preserve it below for appellate review, when his attorney agreed *1232 with the trial court that Bergeron was applicable. Consequently, we need not consider that issue on appeal and the judgment below could be affirmed on that basis alone. See Rule 1-3, Uniform Rule of Louisiana Courts of Appeal.
However, in the alternative, and in the interest of giving Mr. Manning the benefit of appellate review as to the merits, we will consider the applicability of Bergeron. It appears that there are no prior decisions expressly addressing the issue raised by Mr. Manning.[2] Nonetheless, it is apparent from the Bergeron opinion, 492 So.2d at 1199-1200, that the Supreme Court had two concerns which it addressed by imposing a "heavy burden" upon those seeking to modify a child custody decree. First, the Supreme Court was concerned that there is inherently some harm likely to be caused to the child by a change of environment, 492 So.2d at 1200. Thus, the policy is that a change of environment is to be avoided if possible. Such a change of environment, of course, is caused more directly by a change in physical custody than a change in "legal custody" as Mr. Manning uses that term.
Second, the Supreme Court was concerned that a child might be "irreparably damaged... by the effects of an attempted or threatened change of custody" and that harm could be done to a child by "unjustified litigation, threat of litigation or continued interparental conflict." Id. Thus, the Supreme Court also was concerned in Bergeron with discouraging child custody modification litigation as the mere existence of such litigation could be harmful to the child. This policy is as applicable to attempts to change physical custody as it is to attempts to change "legal custody."
We previously have summarized the policies of Bergeron in terms as applicable to modification of physical custody as to "legal custody": "Harm may result from disrupting the child's established mode of living and injury may result from encouraging unjustified litigation or the continuation of parental conflict." Monteleone, 591 So.2d at 1234. Thus, we have no difficulty in finding that the Bergeron standard applies to Mr. Manning's attempt to modify the physical custody aspects of the child custody judgment in this case.[3]
Even if the Bergeron standard did not apply to this case, a de novo review of the record would not lead to a modification of the child custody judgment. See generally La. Civ.Code arts. 131, 134 (custody to be awarded in accordance with the best interest of the child). The evidence, presented in the testimony of two psychologists, is that it would not be in the best interests of Caitlin for her to be removed to the Chicago area for twelve consecutive weeks. The testimony was that a seven year old child cannot comprehend such a length of time and would be unable to understand it as a "visit." Instead, psychologically, there is a change of "home" which, of course, must be reversed at the end of the visit. Also, such a lengthy separation from Caitlin's "primary psychological parent," Ms. Davenport, would not be in Caitlin's best interest. Common sense is in accord with these views of the psychologists.
A number of practical matters also suggest that the modification sought by Mr. Manning would not be in Caitlin's best interests. The specific living arrangements in the Chicago area were not yet known at the time of trial. Mr. Manning plans to live temporarily with relatives while he looks for an apartment in the Chicago area. Also, as of the time of *1233 trial, Mr. Manning had not yet actually secured employment in the Chicago area, so his work schedule there is unknown. Perhaps most importantly, Mr. Manning had not (as of the time of trial) made any specific plans or provisions for child care. Mr. Manning should have been prepared to address child care with specificity at trial. Instead, what evidence there is on point suggests that Mr. Manning's relatives, because of their employment, geographic location and other reasons, are not likely to be able to provide child care. It thus appears that Mr. Manning would have to use an as yet unknown hired sitter or day-care facility.
In contrast, Ms. Davenport's mother is available to care for Caitlin when Ms. Davenport is at work. Ms. Davenport's mother has provided such care since Caitlin was five weeks old and is Caitlin's long-term primary caretaker after Ms. Davenport herself. The detriment to Caitlin of spending a substantial part of her time during the summer with an as-yet unknown sitter or in a day care facility, as opposed to her grandmother, is obvious and compelling.[4]
In the conclusion of his brief, Mr. Manning requests that we reverse and enter judgment "allowing him at least one month of continuous physical custody/visitation with his daughter, Caitlin, during the summer." This request is radically different from Mr. Manning's Rule seeking twelve weeks continuous physical custody. Because of that Rule, Ms. Davenport prepared to oppose at trial a request for twelve weeks of continuous physical custody by Mr. Manning and the psychologist expert witnesses prepared opinions as to the desirability, etc. of twelve weeks continuous physical custody by Mr. Manning. Also, although there are some indications by Mr. Manning's attorney in the trial transcript that he would "take" less than twelve weeks, the trial court was certainly justified in believing that it was dealing with a request for twelve weeks physical custody and in focusing on that request during trial and in deciding the case based on that request. Allowing Mr. Manning to "move the goalposts," by asking for a radically different relief on appeal than he sought in his Rule, would undermine the whole trial process.
In any case, although four continuous weeks of physical custody in the summer may not appear greatly different from the existing child custody judgment's provision for two periods of two weeks each at least one month apart during the summer, the Court of Appeal is not the proper forum for such fine-tuning of child custody decrees. In any case, as we have held above, the Bergeron standard is applicable to this case and has not been met.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Since the time of trial, Mr. Manning's father has passed away.
[2] Mr. Manning cites Parker v. Parker, No. 94-CA-1685 (La.App. 4th Cir. 12-15-94), 648 So.2d 34, but that case is not on point. Parker distinguishes "de facto or physical custody" from "legal custody" in the sense of distinguishing unlawful custody from lawful custody. Parker simply reiterates a holding of Bergeron that unlawful de facto or physical custody cannot be used to bootstrap an argument to be awarded legal custody. Parker does not even mention the issue raised by Mr. Manning.
[3] Monteleone held that the Bergeron "heavy burden" applies to consent or stipulated judgments. Other circuits have disagreed. However, Bergeron's policies seem as applicable to stipulated or consent judgments as to judgments entered after contested proceedings. Further, the second Bergeron policy, minimizing the trauma of child custody litigation, is well-served by stipulated or consent judgments as they allow earlier and less acrimonious terminations of child custody litigation. Therefore, they are to be encouraged by being given the protection of Bergeron.
[4] Ms. Davenport testified as to a number of complaints regarding Mr. Manning's care of Caitlin and her concerns about his ability to care for Caitlin over a long period. Her concerns do appear to have some justification, but we need not address them to decide this appeal.