766 So.2d 723 (2000)
Gregory Gilmer LEE, Plaintiff-Appellant,
v.
Angela Diane LEE, nee Scriber, Defendant-Appellee.
No. 34,025-CA.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2000.
Writ Denied November 13, 2000.
*724 Albert E. Loomis, III, Monroe, Counsel for Appellant.
Donald R. Brown, Alexandria, Counsel for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
In this child custody proceeding, the mother, Angela Diane Scriber Lee ("Angela"), filed a rule to modify the prior judgment which awarded the parties joint custody and named the father, Gregory Gilmer Lee ("Greg"), the domiciliary custodian of the two children. The trial court modified its prior custody judgment to provide equal sharing of the physical custody of the children. Because we find that Angela Lee, the plaintiff-in-rule, failed to satisfy the applicable burden of proof for modification of child custody judgments, we reverse the trial court's judgment and reinstate the original custody decree.

FACTS
Greg and Angela were married on June 2, 1990. Two children were born of the marriage, namely, Meagan Danielle born on April 2, 1992 and Katie Alayne born on April 24, 1995. A judgment of divorce was granted on April 15, 1997. Custody of the children was contested during a trial lasting fourteen days. By way of a judgment rendered May 21, 1998, the trial court awarded Greg and Angela joint custody with Greg being the domiciliary custodian of the two children. The judgment specified that Greg was to have physical custody of Meagan and Katie during the nine months of the school year, beginning one week before the start of school in the fall and ending three days after the close of school in the spring. Angela was to have physical custody of the girls during the three summer months. Each was to have custody on alternating weekends while the children were in the physical custody of the other parent. Angela was also granted one week visitation during spring break, and Greg was granted one week visitation during the summer months for vacation time. The judgment also specified the division of custody for holidays. In written reasons for the judgment, the trial court reported that Angela had been diagnosed with bipolar disorder and was under treatment for the condition. The trial court noted the turbulent relationship between Angela and her parents and expressed concerns as to whether Angela and her family could provide the guidance and direction needed for the children to thrive. Other concerns expressed by the trial court included Angela's impulsive behavior as exhibited in job changes, residential moves, purchases, and relationships, as well as the hectic pace of her schedule which included attending nursing school, working for her father, and caring for the children on a bi-weekly basis. With these concerns in mind, along with the children's need for stability, continuity, and contact with their mother, the trial court ordered the joint custody arrangement specified above. A condition of the custody order was that Angela continue treatment, including medication and counseling for the bipolar condition, and that her treating physician file reports certifying Angela's compliance with her treatment.
On December 10, 1998, approximately six months after the rendition of the joint custody judgment, Angela filed a rule alleging a change in circumstances warranting a change in the domiciliary custody of the children. Angela alleged that she was *725 in remission from the bipolar disorder and that she was no longer required to take medication for the condition. Angela further alleged that she was no longer attending school and that she was employed full-time for her father as a manager of an insurance agency. Additionally, Angela alleged that Greg began an affair with a married woman named Regina Cencer ("Regina"), and that he was trying to estrange the children from her by involving Regina in their lives. Other allegations pertained to Greg's alleged interference with Angela's involvement in the children's educational activities and his alleged failure to properly attend to the children's physical health. In response to the rule filed by Angela, Greg filed an exception of no cause of action. Greg argued that the judgment of May 21, 1998 was a considered decree and that Angela failed to make the prerequisite allegations mandated by Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986) for a modification of a considered decree. The trial court granted the exception. Thereafter, Angela amended her rule to allege the marriage of Greg to Regina and the introduction of step-siblings into the family as changes in circumstances warranting a modification of the prior custody decree. Angela also made specific allegations regarding the behavior of Regina's son toward Katie. Angela alleged that any harm to result from a change in custody would be substantially outweighed by the advantages to the children.
Trial of the rule occurred over five days. In written reasons for judgment, the trial court noted positive changes in Angela's life, including the stability of her mental health, employment, and living situation. The trial court also noted the improved relationship between Angela and her parents, Angela's involvement with the children's school activities, and her loving relationship with her daughters. The trial court found that Greg and his new wife, Regina, were "excellent parents" for the two children, but also determined that Meagan and Katie should have the benefit of their mother on a more substantial basis. Accordingly, the judgment of the trial court rendered February 18, 2000 maintained the joint custody award but modified the division of custody to provide for equal sharing of physical custody on a two month rotating basis with visitation on alternating weekends for the non-custodial parent. Greg appeals this judgment.

DISCUSSION
Greg contends that Angela failed to meet the burden of proof set forth in Bergeron for modification of a considered decree of custody. Greg asserts that he has provided a stable and loving environment in which Meagan and Katie have thrived. He also asserts that Angela has failed to show any change in circumstances warranting a change in the custody arrangement. It is Greg's position that the trial court either failed to apply the Bergeron burden of proof or committed manifest error in its factual analysis. Angela asserts that the evidence supports the trial court's findings and shows that she has made significant improvements in her emotional and physical well-being by maintaining steady employment, establishing a stable home, and strengthening her relationship with Meagan and Katie. As an alternative, Angela contends that the trial court's judgment did not modify the prior custody arrangement, but simply increased her visitation rights. As such, the Bergeron burden of proof would not apply.
In Bergeron, the Louisiana Supreme Court set forth the burden of proof which must be met by a party seeking to change a considered decree of permanent custody. A considered decree is one for which evidence as to parental fitness to exercise custody is received by the trial court. Roberie v. Roberie, 33,168 (La. App.2d Cir.12/8/99), 749 So.2d 849. When a trial court has made a considered decree of custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so *726 deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron, supra. Imposition of this heavy burden is justified by awareness of the harm that may result to children from custody battles, unjustified litigation, and custody changes that disrupt young lives and undermine the stability needed for children to thrive.
The decree of permanent custody rendered by the trial court on May 21, 1998, is a considered decree. The trial court's decision was made after fourteen days of testimony as to the parties' parental fitness. We reject Angela's contention that the trial court's judgment rendered February 18, 2000 is not a modification of the initial considered decree but is merely an increase in visitation. The trial court did not merely increase visitation as claimed by Angela. Rather, the trial court modified the physical custody provisions to establish an equal sharing arrangement whereby the two girls are to change homes every two months. The issue of whether Bergeron applies to changes in physical custody was raised in Davenport v. Manning, 95-2349 (La.App. 4th Cir. 6/5/96), 675 So.2d 1230, in which Mr. Manning argued that Bergeron applies only where a party seeks to change legal custody, i.e. from sole custody to joint custody, and does not apply where a party seeks only a change in physical custody. The Fourth Circuit rejected Mr. Manning's argument and found that Bergeron applies to attempts to modify physical custody. This finding was based upon the concerns underlying the Bergeron decision, including the harm likely to be caused a child by a change in environment which results from a change in physical custody and the damage likely to result from unjustified litigation to change custody and the continuance of interparental conflicts. We agree with the Fourth Circuit's analysis and hold that the heavy burden imposed by Bergeron applies where modification in physical custody is sought by a party after a considered decree is rendered. Accordingly, we must examine the record to determine whether Angela satisfied the Bergeron burden of proof.
Trial testimony revealed changes for the better in Angela's life. At the time of trial, Angela was in remission from the bipolar disorder and she was no longer on medication. Dr. Debora Murphy, Angela's treating psychiatrist, testified that she would have released Angela from treatment as of August 1998 if it were not for the provision in the judgment of May 21, 1998 requiring Angela to continue under her care and treatment. Both Dr. Murphy and Shermie Clark, Angela's counselor, believed that Angela had achieved stability in her life. Angela had established a close and loving relationship with her daughters, Meagan and Katie, and she was actively involved in their school activities. Angela was employed full-time as manager of an insurance agency owned by her father, Gerald Scriber, and she was living in a house in Delhi, Louisiana, in close proximity to Greg's residence. Angela was no longer in nursing school and no longer had to travel between school in Ruston, her job in Rayville, and her home in Delhi. It is noteworthy that the achievement of stability in Angela's life was largely facilitated by her parents who provided her job and paid for her home and automobiles. The evidence also indicates that the Scribers were instrumental in supporting Angela's efforts to continue this custody dispute and that they had even hired a private investigator at significant costs to follow Greg and attempt to discover whether he was involved with anyone. The evidence further showed that Angela had begun to date different individuals and that at least two of these individuals had been introduced to Meagan and Katie.
The evidence also revealed changes in Greg's life since the rendition of the initial custody decree. On March 11, 1999, Greg *727 married Regina. Two step-siblings were introduced into the family, namely Sabrina who was the age of eight and Patrick who was the age of six. Meagan and Katie have a good relationship with Regina. Also, the evidence shows active involvement by Greg in Meagan and Katie's education and religious development.
Angela presented the testimony of Dr. Tony Young, a child psychologist, who had met with Meagan and Katie approximately twenty times beginning in April 1996 and continuing throughout the months prior to trial of this matter. Dr. Young testified that Angela was concerned about the impact of the custody situation on the girls and about preparing the girls for any court appearances. Dr. Young's impression was that Meagan and Katie preferred to be with their mother and that their chief attachment was to Angela. He believed that it would be better for Meagan and Katie to spend more time with Angela. However, Dr. Young also testified that Meagan and Katie are likewise attached to their father and that Meagan's excellent school performance and the girls' good behavior were signs that they were doing well under their father's care. Dr. Young did not express concerns about Greg's marriage to Regina and opined that the marriage was not a bad thing for Meagan and Katie. Dr. Young's testimony also touched upon concerns raised by Angela regarding the behavior of the step-brother toward Katie. Dr. Young did not seem to find any substance for her concerns and referred to his notes as indicating that things were going fine at Greg's house and that Katie and Meagan were playing with their step-siblings.
Phyllis Allen Taylor, a licensed professional counselor and certified play therapist, also testified about the well-being of Meagan and Katie. Ms. Taylor had begun seeing Meagan and Katie in 1996 and had seen them approximately seven times during the eleven months preceding the trial of this matter. Ms. Taylor found that Meagan and Katie were very attached to their father and that there was a strong bond between them. She stated that the girls viewed Greg as a supporter and nurturer. Regarding her discussions about Greg's marriage with Meagan and Katie, Ms. Taylor testified that Meagan realized she would be sharing her father with a new family and that Katie, despite trouble adjusting initially, had adjusted very well and enjoyed sharing a room with the other girls and playing with her step-siblings. Also, Ms. Taylor testified that Meagan and Katie got along well with Regina and felt very comfortable with her. It was Ms. Taylor's belief that any change in custody which would increase Meagan and Katie's time with Angela and thereby decrease their time with Greg would adversely affect Meagan and Katie by suggesting some rejection of them by Greg in favor of his new family. Ms. Taylor opined that Greg had done a good job as the custodian of the girls. She described Meagan and Katie as well-adjusted and secure, and she did not believe that any reason existed to change the custody arrangement.
A trial court's determination of custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Shaw v. Shaw, 30,613 (La.App.2d Cir.6/24/98), 714 So.2d 906, review denied, 98-2414 (La.11/20/98), 729 So.2d 556 and 98-2426 (La.11/20/98), 729 So.2d 558; Warlick v. Warlick, 27,389 (La. App.2d Cir.9/29/95), 661 So.2d 706. As stated previously, Angela had to satisfy the heavy burden of proof set forth in Bergeron to prevail in her request to modify the considered custody decree. It is obvious that the first prong of Bergeron is not met in this instance. Nothing in the record shows that the continuation of the present custody is so deleterious to Meagan and Katie as to justify a modification of the custody decree. Consequently, Angela must have established by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to Meagan and Katie. The burden of proof *728 by clear and convincing evidence requires proof that the existence of the disputed fact is highly probable, that is, much more probable than its nonexistence. Utz v. Kienzle, 574 So.2d 1288 (La.App. 3d Cir. 1991).
After thoroughly reviewing the record presented and the applicable law, we find that Angela failed to meet the Bergeron burden of proof. The record does not establish by clear and convincing evidence that the advantages of a change in the custodial arrangement substantially outweigh any harm likely to be caused by a change of environment. While we commend Angela for the improvements in her life and recognize that these improvements address some of the concerns expressed by the trial court at the time it rendered the initial custody decree and certainly will benefit Angela's relationship with her daughters, the fact remains that Meagan and Katie are well-adjusted young girls who have thrived under the current custody arrangement. Testimony that Meagan and Katie would benefit from spending more time with Angela was tempered by testimony that a change in the custodial arrangement may serve as a sign of rejection of the girls by Greg in favor of his new family. Testimony that Meagan and Katie express sadness and then resignation when leaving the physical custody of Angela was tempered by testimony regarding similar reactions when leaving the physical custody of Greg. Testimony that Meagan and Katie rarely mention Greg or refer to him without any excitement when with Angela was tempered by similar testimony that they rarely mention Angela or refer to her with any excited emotion when they are with Greg. Finally, the testimony established that Meagan and Katie have strong attachments to and close bonds with both parents. On the record before us, there is no clear showing of net benefit to be derived by Meagan and Katie from any change in the custody arrangement.
Stability of environment is an important factor to be taken into account in considering changes in custody. A change from a stable environment should not be made absent a compelling reason. Hensgens v. Hensgens, 94-1200 (La.App. 3rd Cir. 3/15/95), 653 So.2d 48, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478. No compelling reason was shown to justify a change in environment in this instance. Angela argued during the course of trial that equal sharing of custody should be ordered, and the trial court ordered such in its judgment. Joint custody does not necessarily require an equal sharing of physical custody. Nichols v. Nichols, 32,219 (La.App.2d Cir.9/22/99), 747 So.2d 120. The legislative scheme providing for joint custody of children mandates substantial time rather than strict equality of time. See La. R.S. 9:335; Nichols, supra; Carroway v. Carroway, 441 So.2d 494 (La. App. 2d Cir.1983). Feasibility alone does not require a fifty-fifty sharing of physical custody. Shaw v. Shaw, supra. Although a fifty-fifty sharing of physical custody would be feasible in this instance due to the locations of the parties' respective homes in the same community, the facts do not warrant such a change. There is no clear and convincing evidence that a change in physical custody would be of such benefit to Meagan and Katie as to overcome the obvious disadvantage of being deprived of a stable home base for any length of time. Under the initial custody order, Angela has Meagan and Katie for 117 days per year, not counting holidays. Angela has physical custody of her daughters every other weekend and throughout the summer months. The joint custody arrangement affords Angela continuing and frequent contact with Meagan and Katie as required by La. R.S. 9:335A(2)(a).
We find that the trial court erred in its determination that Angela prevailed in her burden of proof. The changes that have occurred in the lives of Angela and Greg have not been shown to have materially affected the welfare of Meagan and Katie so as to require a change in physical custody. Accordingly, we must reverse the *729 judgment of the trial court and reinstate the original joint custody decree.

CONCLUSION
For the reasons stated, the judgment of the trial court is reversed. The original joint custody decree is hereby reinstated. Costs are assessed to the appellee.
REVERSED.