# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 09-1489


**RACHELLE STARRETT PREUETT**

**VERSUS**

**IRA ANDERSON PREUETT**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 16,679
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE[1]

**\*\*\*\*\*\*\*\*\*\***


**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Marc T. Amy, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

Amy, J., concurs in the result and assigns reasons.

Pickett, J., concurs and assigns written reasons.

**REVERSED AND RENDERED.**


**James Ogden Middleton II**
**Attorney at Law**
**1744 White Street**
**Alexandria, LA 71301**
**(318) 443-4377**
**Counsel for Plaintiff/Appellee:**
**Rachelle Starrett Preuett**

---

[1]Judge Swent was sitting as an ad hoc judge.

**Thomas D. Davenport, Jr.**
**The Davenport Firm**
**1628 Metro Drive**
**Alexandria, LA 71301**
**(318) 445-9696**
**Counsel for Defendant/Appellant:**
**Ira Anderson Preuett**

**GREMILLION, Judge**.

The defendant-appellant, Ira Preuett, appeals the judgment of the trial court awarding the plaintiff-appellee, Rachelle Starrett Preuett (now Edwards),[2] primary domiciliary custody of four of their six children. For the following reasons, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

Preuett and Edwards have been in an ongoing custody battle following their divorce. Of that union, six children were born.[3] In September 2007, a considered custody decree was rendered in which Preuett was named the principal domiciliary parent and Edwards received visitation. The current issues revolve around Edwards' move to Oregon to reside with her new husband. In January 2008, Preuett filed a Rule for Child Support & to Clarify Stipulated Judgment for Joint Custody, urging that the September 2007 judgment lacked clarity and that its "functional operation has caused a hardship between the parties." Edwards answered with a counter-rule for "Modification of Custody Judgment, Physical Custody Plan and for Calculation of Child Support[.]" In the counter-rule she noted the omission of Abbie from the original judgment and requested that she be made the domiciliary custodian of Abbie. She further requested that the September 2007 judgment "visitation schedule needs to be modified" as it was made before her move to Oregon. We note that she did not request that she be made the domiciliary parent of the remaining four children. Preuett filed a Dilatory Exception of Vagueness and Peremptory Exceptions

---

[2]We will refer to Ira by his last name and Rachelle by her current married name, Edwards.

[3]Jacob (a major at the time of trial and not included in the judgment), Abbie (who turned eighteen in January 2010), Caleb (15), Anna (12), Benjamin (10), and Samuel (8). We note that Abbie was not included in the original September 2007 judgment, however, she was included in the judgment being appealed.

1

of No Cause and No Right of Action. Following a hearing, the trial court[4] denied the

exceptions and set forth various substantive findings regarding custody issues.

Preuett appealed that judgment and, on appeal, in *Preuett v. Preuett*, 08-1060

(La.App. 3 Cir. 2/11/09), 4 So.3d 260, we reversed the trial court's judgment

modifying the September 2007 considered custody decree and remanded for further

proceedings on the merits.[5] Regarding the trial court's rulings on various exceptions,

we found:

> Based on the allegations in [Edwards'] petition, we do not find
> that the trial court erred in denying the exceptions. Her petition,
> asserting that the previous visitation schedule did not account for her
> relocation and that [Preuett] will not allow the children to visit her in
> Oregon, put forth, at least in general terms, facts sufficient to meet the
> *Bergeron* standard. It is evident from the face of her pleading that
> maintaining the current custody decree is deleterious to the children, in
> light of the fact that it provides for each parent to have physical custody
> of the minor children on a weekly basis-a feat that is unworkable
> considering the parents' locations.

*Id.* at 264.

Following the remand, the trial court,[6] after hearing testimony, rendered

a final judgment in October 2009, in which it stated:[7] [8]

> [T]he evidence adduced by [Edwards] met both of the burdens of proof
> required by *Bergeron v. Bergeron* 492 So.2d 1193, (La.1986) for a
> modification of the September 25, 2007 judgment, as continuation of the

---

[4]The Honorable Peyton Cunningham, Jr. presided ad hoc over the hearing.

[5]The hearing was only to rule on exceptions and neither party was prepared to present evidence regarding the modification of a considered decree.

[6]The Honorable F. Rae Donaldson Swent presided ad hoc over the proceedings following the remand.

[7]In September 2009, the trial court issued "Partial Reasons for Judgment" finding that "the evidence presented is overwhelming that the present arrangement is so deleterious to the children that the arrangement should be changed." It then allowed the opportunity for supplemental briefs regarding the issues of custody and relocation.

[8]In October 2009, the trial court issued "Supplemental Reasons for Judgment" in which it discussed the La.Civ.Code art. 134 factors along with the relocation factors.

2

present custody is so deleterious to the children as to justify modification and by proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the children.

The trial court named Edwards the primary domiciliary custodian of Caleb, Anna, Ben, and Samuel. It named Preuett the primary, domiciliary custodian of Abbie. It ordered Preuett to "turn over" Anna, Ben, and Samuel on October 27, 2009 and that Caleb would remain with Preuett until the Christmas holidays at which time he would transfer mid-school-year to Oregon. The judgment set forth various rulings regarding holidays, visitation, and transportation and costs.[9] On December 15, 2009, Preuett filed a Motion to Stay the October 23, 2009 judgment and, thereafter, appealed the October 23, 2009 judgment. Based on our rulings herein, the Motion to Stay is rendered moot.

## ISSUES

Preuett assigns as error:

1. The trial court's modification of a considered decree in the absence of any evidence that complies with the *Bergeron* standard and Edwards' failure to meet her burden of proof. Alternatively, the trial court committed manifest error by ordering a change in custody.

2. The trial court erred by improperly modifying a considered decree in the absence of a request by Edwards.

3. The trial court erred by relocating some of the children in the absence of a request to do so by Edwards. The trial court erred by using the fact that Edwards relocated as the sole basis to relocate some, but not all, of the children. In the alternative, the trial court erred by ordering the relocation of the children in the absence of compliance with La.R.S. 9:355.1 et. seq.

---

[9]We note that the trial judge, F. Rae Donaldson Swent, following issuance of her judgment, filed an Application for Clarification and/or Rehearing and a Response to Opposition to Application for Clarification and/or Rehearing with this court, both of which were denied.

4.      The trial court erred by failing to render a judgment that would maintain family solidarity, which would promote companionship and affection amongst the children.

5.      The trial court erred in ordering the cost of transportation of the children be divided equally between the parties when the matter was previously ruled upon and not appealed by any party.

## THE *BERGERON* STANDARD

When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

*Bergeron v. Bergeron,* 492 So.2d 1193, 1200 (La.1986). Upon review, the trial court's determination is entitled to great weight and will not be disturbed on review unless there is a clear showing of abuse. *Id., See also AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. The child's best interests are of the utmost importance. La.Civ.Code art. 131; *Deason v. Deason*, 98-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. In considering the child's best interests, pursuant to La.Civ.Code art. 134, the court may consider the following factors:

(1)     The love, affection, and other emotional ties between each party and the child.

(2)     The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3)     The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4)     The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5)     The permanence, as a family unit, of the existing or

4

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In our previous ruling in *Preuett,* 4 So.3d 260, 264, we stated: "It is evident from the face of her pleading that maintaining the current custody decree is deleterious to the children[.]" However, that opinion was limited to a determination of whether the petition alleged sufficient facts to survive exceptions of no right of action and no cause of action. We did not make factual findings, but only considered the allegations in the petition. On the merits, it is clear that, at the very least, the current *visitation schedule* renders a week-to-week arrangement unworkable and by necessity, modification is required. However, in order to meet *Bergeron's* requirements for a change in physical custody, Edwards had to prove by clear and convincing evidence that the harm likely to be caused by a change of environment was outweighed by its advantages to the child and that the change was in the best interests of the children.

5

Additionally, the trial court addressed the issue of relocation.[10]

_____

[10]Louisiana Revised Statute 9:355.13 sets forth the burden of proof of the relocating parent as follows:

> The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life.

Pursuant to La.R.S. 9:355.12, the factors to consider in a contested relocation are:

(1)   The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

(2)   The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

(3)   The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

(4)   The child's preference, taking into consideration the age and maturity of the child.

(5)   Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

(6)   Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7)   The reasons of each parent for seeking or opposing the relocation.

(8)   The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9)   The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10)   The feasibility of a relocation by the objecting parent.

(11)   Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

However, we need not reach that issue as we have found that the trial court abused its discretion in changing physical custody of four of the children since *Bergeron* was not met. While extensive testimonial evidence was adduced at the various hearings, we find that there was no clear and convincing evidence that such a change was warranted.[11]

## ON THE MERITS

The trial court did provide extensive reasons for judgment that, in our view, relied on opinions rather than facts. In summation, the overriding concern of the trial court was that the children were being alienated from the mother. Indeed, the expert, Dr. Logan, found that to be true, but noted that Edwards blames that fact solely on Preuett. Dr. Logan opined that Edwards' "current living arrangement, both in terms of geographical location and in terms of the quality of her marriage, are substantial obstacles in her relationship to the children that *only she can alter.*" Yet, the trial court deemed it to be the father's responsibility to not only foster the relationship, but pay for it too. The trial court stated:

> It is true, as Dr. Logan concluded, that only [Edwards] can repair the effects of her relocation-but she can only do that by being with the children, which [Preuett] has made almost impossible for her to afford or accomplish. [Preuett] sees the relocation as [Edwards'] problem, not his, because she chose to move, even though she supposedly promised him she would not leave the children. What did he mean by that testimony-that he expected to still control [Edwards], after divorce, through the children? This court does not believe that Louisiana law is such that only those who can afford it, get to move and still maintain a relationship with their children.

Unlike the trial court, we find the evidence was that the alienation was primarily of

---

(12)     Any other factors affecting the best interest of the child.

[11]Because we have found that the trial court abused its discretion in removing the four youngest children from Preuett's home, we need not address Preuett's remaining assignments of error.

Edwards' own doing. She decided to move to Oregon. She created the relocation; we are uncertain why the trial court concluded that it was Preuett's duty to "repair the effects of [Edwards'] relocation."

The two instances in which the trial court infers that Preuett purposely thwarted visitation are insufficient to split apart siblings and move them across the country, and his actions were justifiable due to the circumstances. In the first instance, Preuett retrieved his children in Oregon after receiving text and/or Facebook messages at 2 a.m. from the children that they were scared due to fighting between Edwards and her husband. All of the children and Edwards herself, who is currently estranged from her husband (a man from New Zealand whom she met on the internet), testified to ongoing fighting and arguing between their mother and stepfather.

In the second instance, Edwards was to have the children for Christmas. She was scheduled to fly from Oregon to pick-up the children; however, she was snowed-in. Edwards requested that the children be allowed to fly out with an airport chaperone on Christmas Eve, taking a flight that had layovers in multiple cities. Preuett refused and testified that he did not want his children flying without a family member or to be stranded in an airport on Christmas Eve or Christmas Day. We find neither of these situations to be a willful interference with Edwards' visitation. Even if it was, these isolated events do not rise to the high level contemplated by *Bergeron*.

Moreover, we are uncertain just what the trial court expects a father to do to maintain a close mother-child bond in these circumstances. The evidence was that the father freely allowed the children to call their mother, and to purchase presents for her at appropriate times. He also allowed extra visitation with the

8

children when Edwards was in Louisiana. Every child testified that the father did not speak ill of the mother. Nevertheless, the trial court imputes the children's indifference to their mother to the father. The trial court found the mother "went above and beyond" to visit her children. The trial court correctly believes that an adult is free to do as she likes and pursue her own new life following divorce, but she cannot be surprised that her cross-country move has negatively affected her relationship with her children.

In considering the various other La.Civ.Code art. 134 factors that would militate in favor of a change of custody, we find no overwhelming, clear and convincing evidence to suggest that the harm caused by uprooting the children is substantially outweighed by the benefits of residing with Edwards. On the contrary, we find it would only enhance instability in their lives and split the children apart.

*Factors one and twelve*- Prior to the divorce, Edwards was a stay-at-home mom and home schooled her children. The children now attend a Christian school in the Alexandria area, and it appears that they are adjusting well and enjoying school life, as all of the children are involved in multiple activities. It is clear from the testimony that both parents maintained strong ties with their children. However, since the divorce, as one can easily anticipate happening, the children are less connected to the mother due to her move to Oregon. Several of the younger children testified that they want to see their mother; however, they do not want to go Oregon.

*Factors two and three*- Both parties are able to meet these needs.

*Factors four, eight, and nine*- The children have lived in Grant Parish all of their lives. Since the divorce, the children have resided in a new family home with their father and stepmother and half-sibling. All of the children expressed a

desire to continue residing in Louisiana in their father's home. The children did not want to move to Oregon, primarily due to the cold weather and the presence of the stepfather, whom none of them like and hardly know. On the other hand, the children are fond of their stepmother, who is the guidance counselor at their school.

*Factor five*- This factor seriously weighs in favor of maintaining the children in their current home with Preuett. There was no doubt that Edwards is estranged from her husband and is undergoing marital counseling. Every encounter between the stepfather and children has led to arguments, fighting, and physical altercations between Edwards and the stepfather; or, as Caleb testified, between himself and the stepfather. Clearly, there is no permanence in this home as the stepfather comes and goes, whereas a familial unit is maintained in the father's home. Moreover, the family unit consisting of all six siblings is maintained in the Grant Parish home.

*Factors six and seven*-We find that both parties are morally fit based on the record before us. The trial court, on the other hand, dismissed the expert's finding that Preuett was very truthful, and opined on his "deceptive nature" finding it "more disturbing than the mother's lack of insight into her own responsibility for contributing to the problems with the children." We simply cannot agree with that finding based on the evidence in the record. The trial court did not discuss the "deceptions" practiced by the father. We surmise that it was referring to the two incidents discussed above. Again, we find these insufficient to show that the father is willfully preventing the mother from executing her visitation with the children. Again, in reality, it is the distance between the parties that is creating the hardship.

*Factor ten*-The trial court did not believe Preuett would be able to

10

facilitate a good relationship between Edwards and the children, but that Edwards would be able to facilitate a relationship between Preuett and the children finding (emphasis added):

> *The distance between the parties has been a substantial factor in the conflict here.* [Edwards] has borne an unreasonable burden in the cost of transportation and living expenses to see the children for even a very short period of time. [Preuett] has refused to allow her the opportunity to see the children for any length of time for this entire two year period. In effect, [Preuett] has willfully prevented the contact with the mother that would have prevented the alienation.

Although the trial court acknowledged the distance as a substantial factor, it still placed the blame on Preuett. Considering that all of the children are school-aged and attend school for ten months of the year, and are involved in school and other extracurricular activities, we are at a loss as to what more Preuett is expected to do. Moreover, we find the burden placed on Preuett to finance the travel is misplaced. Regardless of his ability to do so, we find it unfair that a court would tax the father with the costs of his ex-wife's long-distance move. In our view, the party bearing the heavier burden to facilitate visitation should be the one who created the "substantial factor" of the distance between the parties, i.e., the mother.

The facts at trial were that Edwards was unemployed and not seeking employment, and received over $6,000 a month from Preuett as part of a community property settlement. Additionally, she received the paid-for former family home in the settlement, which she sold for more than $300,000. In our opinion, Edwards should have ample time and means to travel to Louisiana to visit with her children.

In considering those factors, we find nothing to suggest that continuation of custody with Preuett as the primary domiciliary parent is deleterious to the children such that it should be modified. There was no evidence that changing

11

the environment would be advantageous to the children. Rather, it would merely give the mother the substantial contact with the children during the school year and the fact that the parties do not live close enough to make weekend or week-to-week visitation feasible. This will always be the case when a parent moves across the country. In other words, it rewards the mother for moving thousands of miles from her children, while penalizing the father, who has made absolutely no change in his household since the *Bergeron* decree made him the domiciliary parent.

Although the trial court discussed the relocation factors, we find it is unnecessary to do so here as Edwards failed to meet the burden of proof required of *Bergeron.* Accordingly, we find the trial court abused its discretion in awarding her primary domiciliary status of Caleb, Anna, Samuel, and Benjamin. The children are to be returned to their home immediately.

### VISITATION SCHEDULE AND TRANSPORTATION COSTS

The September 2007 custody decree naming Preuett the domiciliary parent is reinstated. The visitation schedule will now be reflected to allow Edwards to have visitation all summer long beginning one week after school ends and ending one week before school resumes. Preuett and Edwards will split the Christmas holidays, alternating from year-to-year having the children for Christmas Day. The Thanksgiving and spring break holidays are to be split from year-to-year so that the year that Preuett has the children for Thanksgiving, Edwards will have them for spring break. In the following year, Edwards will have visitation for Thanksgiving and Preuett for spring break. Further, all transportation costs to Oregon are to paid for by Edwards.

12

## CONCLUSION

The trial court abused its discretion in finding that the *Bergeron* standard had been satisfied and in changing the primary domiciliary status of four of the children. Accordingly, we reverse the judgment of the trial court and reinstate the September 2007 Judgment naming Preuett the domiciliary parent. We further amend the visitation schedule and transportation as set forth above. Costs of this appeal are assessed equally between the parties.

**REVERSED AND RENDERED.**

NUMBER 09-1489

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

RACHELLE STARRETT PREUETT

VERSUS

IRA ANDERSON PREUETT


AMY, J., concurring in the result.

I write separately in this case as I differ from the lead opinion in my appreciation of the evidence in light of the *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986) standard.

In my opinion, the trial court correctly considered this case as a modification of a considered custody decree, one which included an award of joint custody and a physical custody schedule. Any modification of this order required that the *Bergeron* standard be met, including any changes in that schedule. *See Granger v. Granger*, 09-272 (La.App. 3 Cir. 11/10/09), 25 So.3d 162, *writ denied*, 09-2687 (La. 12/18/09), 23 So.3d 941. *Jackson v. Harris*, 05-604 (La.App. 3 Cir. 12/30/05), 918 So.2d 1163; *Cedotal v. Cedotal*, 05-1524 (La.App. 1 Cir. 11/4/05), 927 So.2d 433; *DeSoto v. DeSoto*, 04-1248 (La.App. 3 Cir. 2/2/05), 893 So.2d 175; *Francois v. Leon*, 02-460 (La.App. 3 Cir. 11/27/02), 834 So.2d 1109; *Lee v. Lee*, 34,025 (La.App. 2 Cir. 8/25/00), 766 So.2d 723, *writ denied*, 00-2680 (La.11/13/00), 774 So.2d 150 (citing *Davenport v. Manning*, 95-2349 (La.App. 4 Cir. 6/5/96), 675 So.2d 1230).

Rather than the approach suggested in the lead opinion, I find that the record supports a determination that Ms. Edwards met the *Bergeron* standard as the continuation of the physical custody schedule was so deleterious to the children as to justify a modification. The physical custody schedule simply proved unworkable

after Ms. Edwards relocated to Oregon. I also find that the record supports a determination that any harm likely caused by the change in environment to afford Ms. Edwards a more concentrated period of physical custody, in keeping with her location, is substantially outweighed by advantages to the children since they would have more consistent contact with their mother.

However, in my view, the trial court erred in determining that a change of domiciliary parent was appropriate or supported by the evidence. Neither do I find support for the trial court's relocation of the children to Oregon. Instead, the trial court's objectives should have been reached by a physical custody schedule maintaining the children in their father's home during the school year and with their mother during the summer. Accordingly, I join in the lead opinion's recasting of the physical custody schedule.

For these reasons, I concur in the result.

RACHELLE STARRETT PREUETT

VERSUS

IRA ANDERSON PREUETT

**PICKETT, J., concurring in the result.**

I agree with the conclusion reached by Judge Gremillion that the minor children should remain in the custody of their father and with the visitation in favor of the mother as set forth in his opinion.

Judge Gremillion determined that Mrs. Edwards failed to meet the heavy burden set forth in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). I agree that, even accepting the trial court's view of the evidence as we are required to do under the manifest error standard of review, those findings fall short of meeting the *Bergeron* standard. I do not find, however, that *Bergeron* applies in the matter before us.

*Bergeron* states that a party seeking a change in custody, subsequent to a considered decree, bears the burden of proving that continuation of the present custody arrangement is so deleterious to the children that a modification of the decree is justified, or of proving by clear and convincing evidence that the harm likely to be caused by a change in the environment is substantially outweighed by its advantages to the child. *Bergeron* focused largely on the interpretation and application of then La.Civ.Code art. 157, now La.Civ.Code art. 134, which addresses factors to consider in determining what is in the best interest of the child, and then La.Civ.Code art. 146,

now La.Civ.Code art. 131, also pertaining to the best interest of the child, and the joint custody laws adopted in 1982.

*Bergeron* was written in 1986. Louisiana Revised Statutes 9:355.1 *et seq.*, which governs contested relocations, was passed by our legislature in 1997 and subsequently amended in 2003. It is my opinion that since the passage of this legislation, the provisions of La.R.S. 9:355.12 governs relocation cases rather than *Bergeron*.

Both the first and fourth circuits have found that *Bergeron* does not apply in relocation cases. In *Rao v. Rao*, 05-1523 (La.App. 1 Cir. 11/4/05), 927 So.2d 391, the appellant argued that the trial court had legally erred by not applying the *Bergeron* standard. The court addressed the issue as follows:

> Louisiana Revised Statutes 9:355.1et seq., which govern relocation, were enacted in 1997 and amended in 2003. Thus, it cannot be presumed that the legislature enacted and amended these statutes in ignorance of the standard established by *Bergeron* and elucidated in *Lungrin*. Further, the supreme court's failure to address the applicability of the holdings of either *Bergeron* or *Evans* in the context of relocation in *Curole* is a compelling, albeit mute, indication that the standards of burden of proof established by the former cases do not apply in the special, limited circumstances of parent relocation specifically addressed by the legislature. We conclude that, to the extent *Bergeron* and *Evans* might somehow be applicable to determination of a relocation request and corresponding change in custody, the standards are inherent within the statutory relocation factors and requirements of good faith and best interest of the children as set forth in La. R.S. 9:355.12 and 9:355.13 respectively.

*Rao*, 927 So.2d at 392.

The fourth circuit approvingly cited this language in *McLain v. McLain*, 07-752 (La.App. 4 Cir. 12/12/07), 974 So.2d 726.

As was noted in *Rao* and *McLain*, the leading case in relocation issues, *Curole v. Curole*, 08-1891 (La. 10/15/02), 828 So.2d 1094, is silent as to the application of *Bergeron* in relocation cases. *Curole* involved a request to modify a consent judgment rather than a considered decree. In its extensive review, however, the

supreme court did not state that La.R.S. 9:355.12 is limited to a relocation request that follows a consent decree only. The court does specifically state that "[t]hese statutes, La.R.S. 9:355.1-9:355.17, govern the relocation of a child's principal residence to a location outside the state[.]" *Id.* at 1096. There is no language that limits the applicability of these provisions to only those with primary custody or to only those who have custody following a consent decree. It is clear these statutory provisions apply anytime a parent seeks to relocate the child's principal residence outside the state. The supreme court in *Curole* specifically states that "the legislature has placed upon the parent seeking relocation a two-part burden: (1) that the proposed relocation is made in good faith; and (2) that the proposed relocation is in the best interest of the child." *Id.* at 1097.

In this case, Mrs. Edwards, the parent seeking relocation, was required to produce evidence sufficient to meet this burden. Louisiana Revised Statutes 9:355.12 specifically sets forth those factors to be considered in determining whether the relocation is in the best interest of these children. When considering the evidence as a whole as applied to the factors set forth in La.R.S. 355.12, I find Mrs. Edwards has failed to demonstrate this relocation is in the best interest of the children.

I, therefore, concur in the result reached by Judge Gremillion.